IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Jacquelyne M. Cramer, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil No. 9:10-1872-SB-BM |
| v. | ) |
| | ) |
| Michael J. Astrue, Commissioner | ) **ORDER** |
| of Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

This is an action brought pursuant to sections 205(g) and 1631(c)(3) of the Social
Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the
Commissioner of Social Security's ("the Commissioner") final decision, which denied
Jacquelyne M. Cramer's ("the Plaintiff") claim for disability insurance benefits. The record
includes the report and recommendation ("R&R") of a United States Magistrate Judge,
which was made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule
73.02(B)(2)(a). In the R&R, Magistrate Judge Bristow Marchant recommends that the
Court affirm the Commissioner's final decision denying the Plaintiff's claim for benefits.
The Plaintiff filed timely objections to the R&R, and the Commissioner filed a response to
the Plaintiff's objections. For the reasons set forth herein, the Court remands this matter
to the Commissioner for further proceedings as specified herein.



## **BACKGROUND**

### I.    **Procedural History**

The Plaintiff filed a claim for disability insurance benefits on January 19, 2007,
alleging disability as of January 31, 2006, due to degenerative disc disease and the

resulting back pain.    The Commissioner denied her application initially and upon reconsideration. The Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"), which was held on May 6, 2009. On August 4, 2009, the ALJ issued a decision denying the Plaintiff's claim, concluding that the Plaintiff retained the residual functional capacity to perform the full range of light work and that the Plaintiff could perform her past relevant work as an administrative assistant and bookkeeper.

The Plaintiff filed a timely request for review, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.   On July 19, 2010, the Plaintiff filed this action requesting judicial review of the Commissioner's final decision.

## II.    Medical Evidence

Although the Plaintiff claims that her condition became disabling in 2006, the medical records reveal that she has been suffering from complaints of neck and lower back pain since at least 1992.  Further, MRI scans and x-rays from at least 2005 have confirmed the presence of lumbar and cervical degenerative disc disease, for which she has received epidural steroid injections at times.

On June 22, 2006, the Plaintiff began seeing Dr. Edward Giove, a family physician with Palmetto Primary Care.   Dr. Giove ordered lumbar and cervical MRIs, which both confirmed the presence of degenerative disc disease.  A lumbar MRI found progressive degenerative damages, most pronounced at L4-5, with moderate central stenosis secondary to the disc bulge and facet arthropathy, with the most involved level being C4-5, where there was moderate central stenosis.  The rest of the levels demonstrated mild central stenosis.

On July 6, 2006, a physical therapist completed a functional capacity evaluation and

2

determined that while the Plaintiff was capable of lifting in the light physical demand category, she would function more appropriately in the sedentary physical demand category.[1] The therapist noted that the Plaintiff's testing results were "inconsistent" and "self-limiting." (Tr. at 260-67.) Specifically, the therapist noted that the "Plaintiff demonstrated self-limiting behavior by stopping the treadmill test, frequent lifting test[,] and positional tolerance test due to complaints of pain and fatigue without a significant increase in heart rate." (Id.)

Dr. Giove referred the Plaintiff to neurologist Dr. Joseph Marzluff, and on August 7, 2006, Dr. Marzluff performed an evaluation on the Plaintiff. The examination showed that the Plaintiff had only a mild restriction in range-of-motion in all directions in her neck; negative straight leg raising; good pulses in her legs; and no motor, sensory, or reflex abnormalities. Dr. Marzluff opined that the Plaintiff's focal spinal stenosis at L4-5 was most likely the cause of her symptoms, and he recommended that an intraspinous device (called an X Stop) be inserted. The Plaintiff indicated that she would consider this option but stated that she could not commit to the surgery due to a "family situation." During a follow-up visit on September 18, 2006, the Plaintiff told Dr. Marzluff that she did "not want to have anything done," stating that she was not "restricted so much that she want[ed] to consider

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005). On the other hand, sedentary work is defined as lifting of no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).

3

a surgical procedure." (Tr. at 274.)

The Plaintiff continued to see Dr. Giove over the next year for various complaints, including sinus and congestion problems and complaints of depression. During these visits, Dr. Giove routinely noted that the Plaintiff had a normal gait and normal balance; that she was not in distress; that she had normal motor functioning; and that her extremities did not show edema or deformities, but only tenderness.

In March of 2007, Dr. Giove prepared an affidavit at the Plaintiff's request, in which he opined that the Plaintiff suffers from cervical and lumbar degenerative disc disease, stenosis, high cholesterol, depression, and anxiety. Dr. Giove noted the Plaintiff's subjective complaints, which included chronic pain in her neck and back as well as pain in her upper and lower body; weakness; tingling in her hands, feet, and legs as well as numbness in her hands and feet; fatigue and lack of energy; depressed mood as well as anxiety and irritability; and left foot dragging and dropping. Dr. Giove opined that the Plaintiff's subjective complaints were consistent with her diagnoses and that the Plaintiff's impairments caused her difficulty performing activities of daily living. Dr. Giove also opined that the Plaintiff cannot perform any activity for an extended period of time; that she has difficulty standing, walking, or sitting for extended periods of time as well as difficulty holding objects; and that she has difficulty focusing, concentrating, and handling stressful situations because of her depression and anxiety. Finally, Dr. Giove outlined the responsibilities of the Plaintiff's prior job as an administrative assistant, based on his understanding of the requirements of that job, and opined that the Plaintiff "is and has been completely and totally disabled from performing her own occupation, or any occupation, on a full-time or consistent basis" since she stopped working in April of 2005.

4

On April 18, 2007, Dr. Adebola Rojugbokan performed a comprehensive orthopedic physical examination of the Plaintiff. Dr. Rojugbokan's examination revealed that the Plaintiff's cervical spine showed no swelling, no tenderness, no increased heat on palpation, no redness, no audible or palpable crepitus, and no malalignment of the articulating bones. Although the Plaintiff displayed diminished muscular strength on complaints of pain, there was no evidence of muscular atrophy. Flexion of the cervical spine was about 30 degrees; extension was about 20 degrees; lateral flexion was about 20 degrees; and rotation was about 60 degrees. With respect to the lumbar spine, Dr. Rojugbokan found no swelling, and he found that there was no redness, no increased heat on palpation, no audible or discernable crepitus, and no malalignment of the articulating bones. There was slight tenderness on palpation, and again, although the Plaintiff's muscular strength was diminished due to complaints of pain, there was no evidence of any muscular atrophy. Flexion of the lumbar spine was about 50 degrees; extension was about 15 degrees; and lateral flexion was about ten degrees. The Plaintiff's shoulders, elbows, knees, and ankles did not show any abnormalities, and again, there was no sign of any muscular atrophy. Furthermore, the Plaintiff's hips did not show any swelling, tenderness, increased heat on palpation, redness, audible or palpable crepitus, or malalignment of the articulating bones. Nor was there any sign of muscular atrophy, although the Plaintiff exhibited decreased range of motion of the hip due to complaints of pain. Examination of the hand revealed no joint deformity and no swelling or decreased range of motion. Grip strength was about 4/5. Also, the Plaintiff had no problem with gross or fine manipulation.

Ultimately, Dr. Rojugbokan assessed the Plaintiff with chronic lower back pain, hyperlipidemia, shoulder pain, and a decrease in the range of motion of the hips, but Dr.

5

Rojugbokan also concluded that the Plaintiff was "quite capable of walking, lifting, seeing, hearing, and reasoning" and noted that she seemed "to have a normal gait when she walks." (Tr. at 300-06.)

On May 2, 2007, state agency physician Dr. Jean Smolka reviewed the Plaintiff's medical records and completed a physical residual functional capacity ("RFC") assessment. Dr. Smolka opined that the Plaintiff had the lifting capacity for light work with the ability to stand and/or walk for about six hours in an eight-hour work day and to sit for six hours in an eight-hour workday, with an unlimited ability to push and/or pull. Dr. Smolka further opined that the Plaintiff could never climb ladders/ropes/scaffolds and could only occasionally climb ramps/stairs, stoop, crawl, or reach overhead, with no other postural limitations. Dr. Smolka found that the Plaintiff had no manipulative limitations other than a limited ability to reach in all directions.

On September 5, 2007, a second state agency physician, Dr. Carl E. Anderson, reviewed the Plaintiff's medical records and concluded that she had the RFC for medium work, with the only limitations being that she could only occasionally climb ladders/ropes and scaffolds and that she had a limited ability to reach in all directions.[2]

Office visits to Dr. Giove from April through October of 2007 failed to reveal any significant objective findings, with Dr. Giove reporting that the Plaintiff had a normal gait and normal balance and motor functioning. The Plaintiff underwent another MRI of her cervical spine on October 2, 2007. The MRI confirmed her degenerative disc disease, but

---

[2] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. §§ 404.1567(c) and 416.967(c).

6

Dr. Giove noted: "no intrinsic cord lesion demonstrated and neuroforamen appear relatively well maintained. Findings do not appear markedly changed compared to June of 2006." (Tr. at 365.) After complaints of facial droop, the Plaintiff underwent a brain MRI on November 20, 2007, which revealed no evidence of an acute intracranial abnormality.

On March 20, 2008, when the Plaintiff next saw Dr. Giove, she complained of pain in the hips and buttocks radiating down the legs. The Plaintiff reported that "nothing" relieved her pain; however, on examination, her extremities showed no edema or deformities, and although she complained of tenderness she walked with a normal gait.

Dr. Giove referred the Plaintiff to Dr. Edward Nolan for pain management therapy, and Dr. Nolan examined her on March 25, 2008. The Plaintiff complained to Dr. Nolan of pain being a level ten on a ten-point scale. On examination, Dr. Nolan found that the Plaintiff had intact and symmetrical deep tendon reflexes; symmetrical bilateral upper and lower extremities 2+; grossly intact sensory function bilaterally in both the upper and lower extremities to light touch; normal motor function and condition with decreased muscle strength (4/5) bilaterally in the upper and lower extremities; and normal tone and gait. The Plaintiff exhibited moderate pain in the cervical and lumbar musculature on palpation and range of motion, and Dr. Nolan assessed the Plaintiff with lumbar radiculopathy, lumbar facet arthropathy, SI joint pain, cervical facet arthropathy, and muscle spasms. The Plaintiff had an epiduragram and received a lumbar steroid injection. On April 9, 2008, the Plaintiff reported mild pain relief in the area that was treated with steroid injections.

The Plaintiff continued to be seen by Dr. Giove, whose objective findings remained generally unremarkable. On July 11, 2008, the Plaintiff reported to Dr. Nolan that her pain was back to 8/10 overall and that her steroid injections were providing only minimal relief.

7

However, Dr. Nolan's examination continued to show grossly intact sensory function bilaterally in the lower extremities with normal motor function and coordination, good muscle strength (4/5) bilaterally in the lower extremities, negative bilateral straight leg raising, and normal tone and gait. Also, straight leg raising was negative bilaterally.

## III.    Administrative Hearing Testimony

At the hearing before the ALJ, the Plaintiff testified that she has not worked since the onset of her condition on January 31, 2006, but that prior to that, she had worked as an administrative assistant and as a bookkeeper. With respect to the former position, the Plaintiff testified that she worked in a corporate office for an oil refinery in Pennsylvania and that her job required her to move around a 300-acre plant retrieving records, getting the staff's systems up and running, and working with the staff to fix equipment. The Plaintiff testified that sometimes her job required her to redesign offices and arrange for work to be done, and that, in order to complete her duties, she had to walk and climb stairs. The Plaintiff testified that she eventually quit her job because of the pain she was experiencing in her neck, shoulders, and legs.

With respect to her most recent job, the Plaintiff testified that she moved to South Carolina and worked as a bookkeeper for a CPA firm from October 2005 through January 2006 and that her job involved working on a computer and retrieving files. She testified that she left this job because it was too physically demanding.

According to the Plaintiff, she currently is able to walk 50 feet to her mailbox and can do her own grocery shopping, although she needs help putting her groceries in the car. The Plaintiff also testified that she can stand for 15 minutes and only lift two pounds at a time, but she stated that she can bend over at the waist. Further, she testified that she is

8

able to sit in a recliner but thinks she could not sit at a work desk for any amount of time. She claimed that she is able to use her hands to use her computer, get dressed, and do her hair, although it takes her a while to do these things.

## STANDARD OF REVIEW

### I.    The Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the Court. Matthews v. Weber, 423 U.S. 261, 269 (1976). The Court reviews de novo those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter to the Magistrate Judge with instructions.

### II.    Judicial Review of a Final Decision

The role of the federal judiciary in the administrative scheme as established by the Social Security Act is a limited one. Section 205(g) of the Act provides that, "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Consequently, judicial review . . . of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:



> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

9

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368

F.2d 640, 642 (4th Cir. 1966)).  In assessing whether there is substantial evidence, the

reviewing court should not "undertake to reweigh conflicting evidence, make credibility

determinations, or substitute [its] judgment for that of" the agency.  Mastro v. Apfel, 270

F.3d 171, 176 (4th Cir. 2001) (alteration in original).

## DISCUSSION

### I.    The Commissioner's Final Decision

The Commissioner is charged with determining the existence of a disability.  The

Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or

mental impairments which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. §

423(d)(1)(A).  This determination involves the following five-step inquiry:

> [The first step is] whether the claimant engaged in substantial gainful
> employment.  20 C.F.R. § 404.1520(b).  If not, the analysis continues to
> determine whether, based upon the medical evidence, the claimant has a
> severe impairment.  20 C.F.R. § 404.1520(c).  If the claimed impairment is
> sufficiently severe, the third step considers whether the claimant has an
> impairment that equals or exceeds in severity one or more of the
> impairments listed in Appendix I of the regulations.  20 C.F.R. § 404.1520(d);
> 20 C.F.R. Part 404, subpart P, App.I.  If so the claimant is disabled.  If not,
> the next inquiry considers if the impairment prevents the claimant from
> returning to past work.  20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a).
> If the answer is in the affirmative, the final consideration looks to whether the
> impairment precludes the claimant from performing other work.

Mastro, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed

to the next step.  Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993).  The burden of

10

production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that the claimant can perform, considering the claimant's medical condition, functional limitations, age, education, and work experience. Walls, 296 F.3d at 290.

Here, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since the amended alleged onset of disability, January 31, 2006. At the second step, the ALJ found that the Plaintiff had established the following "severe" impairment: degenerative disc disease of the cervical and lumbar spine. Third, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determined that the Plaintiff retained the RFC to perform the full range of light work, which is defined as the ability to lift/carry ten pounds frequently and 20 pounds occasionally, stand six hours in an eight-hour day, walk six hours in an eight-hour day, and sit six hours in an eight-hour day. The ALJ further found that the Plaintiff's RFC did not preclude her from returning to her past relevant work as an administrative assistant and bookkeeper. Because the ALJ found that the Plaintiff failed to establish the fourth step, the ALJ did not proceed to the fifth step.

## II.    The Parties' Briefs

In her brief, the Plaintiff asserted that the ALJ committed reversible error by: (1) rejecting the opinion of the Plaintiff's treating physician, Dr. Giove; (2) finding that the Plaintiff could return to past relevant work; (3) failing to obtain expert vocational testimony; and (4) improperly evaluating the Plaintiff's pain allegations.

11

In response, the Commissioner argued that substantial evidence supports the ALJ's decision. Specifically, the Commissioner argued that (1) Dr. Giove's opinion was not entitled to great weight because it was not a medical opinion but was an opinion on a vocational issue, namely, the ultimate issue of disability, and because it was not based on objective medical evidence and was inconsistent with other findings; (2) the ALJ properly considered the combined effects of the Plaintiff's impairments in determining that she was restricted to a range of light work, and in determining that the Plaintiff was able to perform her past relevant work; (3) the ALJ was not required to obtain vocational expert testimony about the Plaintiff's ability to perform her past relevant work; and (4) the ALJ was not required to accept the Plaintiff's complaints of pain in light of the conflicting objective medical findings and other evidence indicating that her complaints lacked credibility.

## III.    The Magistrate Judge's R&R and the Plaintiff's Objections

In the R&R, the Magistrate Judge addressed each of the Plaintiff's arguments raised and ultimately found that substantial evidence supports the ALJ's decision to deny the Plaintiff's claim for benefits.

First, with respect to the Plaintiff's argument that the ALJ erred in rejecting her treating physician's opinion, the Magistrate Judge found, among other things: that Dr. Giove's opinion was more of a vocational opinion than a medical opinion, which ultimately was inconsistent with his treatment notes; that Dr. Giove's opinion about the extent of the Plaintiff's limitations was not reflected by objective medical evidence, but rather, was based on the Plaintiff's subjective complaints; and that Dr. Giove's opinion was inconsistent with the findings of Dr. Rojugbokan, the treatment records from the Trident Pain Center, and the opinions of the medical consultants.

12

Second, with respect to the Plaintiff's argument that the ALJ erred by finding that she retained the RFC to perform her past relevant work, the Magistrate Judge found that the ALJ thoroughly discussed the record, including the medical evidence and the Plaintiff's testimony, and the Magistrate Judge found that the ALJ appropriately explained the basis for his determination that the Plaintiff could perform the full range of light work. With respect to the ALJ's failure to make a detailed assessment of the actual demands of the Plaintiff's past work, the Magistrate Judge agreed with the Commissioner that such error was harmless because the Dictionary of Occupational Titles ("DOT") lists these jobs as performed in the national economy as being sedentary jobs. See DOT 210.382-014; DOT 169.010. The Magistrate Judge further agreed that the ALJ's finding that the Plaintiff could perform the full range of light work encompassed a finding that she could perform sedentary work. See 20 C.F.R. § 404.1567(b) (stating that an ability to perform light work generally includes the ability to perform sedentary work).

Having found substantial evidence to support the ALJ's RFC determination, the Magistrate Judge next rejected the Plaintiff's argument that the ALJ erred by failing to obtain vocational expert testimony. Stated differently, the Magistrate Judge found that vocational expert testimony was not required in light of the ALJ's determination that the Plaintiff's past relevant work as an administrative assistant and a bookkeeper did not require the performance of tasks outside her RFC.

Finally, the Magistrate Judge concluded that the ALJ properly discredited the Plaintiff's statements regarding the pain and limitations caused by her impairment and tha the ALJ adequately explained his reasons for doing so.

The Plaintiff filed lengthy objections to the R&R, raising several arguments. First,

13

she claims that the Magistrate Judge failed to address whether the ALJ reached his decision by applying improper legal standards. Next, the Plaintiff claims that the Magistrate Judge violated the Chenery doctrine by recommending that the Court affirm the Commissioner's final decision on grounds not specifically articulated by the ALJ. In addition to the aforementioned objections, the Plaintiff reiterates her arguments that the ALJ applied incorrect legal standards in: rejecting Dr. Giove's opinions; finding that the Plaintiff could perform work at the light exertional level; finding that the Plaintiff could perform her past relevant work; and discrediting the Plaintiff's testimony.

The Commissioner filed a response to the Plaintiff's objections, asserting that the Plaintiff's objections do no more than ask the Court to re-weigh the evidence considered by the ALJ and reach a different outcome, something that the Court cannot do. In addition, the Defendant disputes the Plaintiff's claim that the Magistrate Judge violated the Chenery doctrine.

## V.    The Court's Analysis

As an initial matter, the Court disagrees with the Plaintiff's assertion that the Magistrate Judge failed to address threshold legal issues. In addition, the Court does not believe that the Magistrate Judge violated the Chenery doctrine by recommending that the Court affirm the Commissioner's final decision on post hoc rationalizations.[3] Nevertheless,

---

[3] In Secs. & Exch. Comm'n v. Chenery, the United States Supreme Court outlined a general principal of administrative law that "a reviewing court . . . must judge the propriety of [agency] action solely on the grounds invoked by the agency." 332 U.S. 194, 196 (1947). Although the Fourth Circuit has not specifically addressed the applicability of this doctrine in the context of Social Security cases, it has discussed the Chenery doctrine in the context of other administrative cases. For example, in Crespin-Valladares v. Holder, 632 F.3d 117, 123 (4th Cir. 2011), the Fourth Circuit stated:

because the Plaintiff essentially objects to all of the Magistrate Judge's findings and

recommendations, and because the Plaintiff takes issue with the Magistrate Judge's

reliance on alleged post hoc rationalizations, the Court will undertake a de novo review of

the Plaintiff's arguments, placing special emphasis on the actual factual findings and

supporting grounds articulated by the ALJ.

## A.    Treating Physician Rule

Pursuant to the applicable regulations, the Commissioner evaluates all medical

opinions received in a case but generally determines the weight to be accorded to each

opinion based on the relationship between the physician and the claimant. See 20 C.F.R.

§§ 404.1527 and 416.927 (2010). Under the so-called "treating physician rule," a treating

physician's opinion is given controlling weight if it is well-supported by medically acceptable

_____

We also recognize that if the BIA acted on improper grounds, we are
"powerless to affirm . . . by substituting what [we] consider[ ] to be a more
adequate and proper basis." Chenery, 332 U.S. at 196, 67 S. Ct. 1575; see
also INS v. Ventura, 537 U.S. 12, 16-18, 123 S. Ct. 353, 154 L.Ed. 2d 272
(2002) (per curiam) (applying Chenery to asylum determinations).

That said, a court must not stretch the Chenery principle so far that it
becomes "an idle and useless formality." NLRB v. Wyman-Gordon Co., 394
U.S. 759, 766 n. 6, 89 S. Ct. 1426, 22 L.Ed. 2d 709 (1969). Here, to turn a
blind eye to the BIA's denial of reconsideration would constitute just such an
"idle and useless" exercise. See de Jesus Melendez v. Gonzales, 503 F.3d
1019, 1023 n. 1 (9th Cir. 2007) (addressing the rationale of the BIA's denial
of reconsideration even though the denial itself was not before the panel);
Alam v. Gonzales, 438 F.3d 184, 186-88 (2d Cir. 2006) (same).

632 F.3d at 124. The Fourth Circuit also cited Chenery in Inova Alexandria Hosp. v.
Shalala, noting that an agency's decision "does not have to be a 'model of analytic
precision," and that the court will "uphold a decision of less than ideal clarity of the
agency's path may reasonably be discerned." 244 F.3d 342, 349 (4th Cir. 2001) (quoting
Bowman Transp., Inc. v. Arkansas-Best Freight Sys., 419 U.S. 281, 286 (1974) (internal
quotations omitted)).

clinical evidence and not inconsistent with other substantial evidence of record. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Mastro, 270 F.3d 171, 178 (4th Cir. 2001). However, "if a treating physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Charter, 76 F.3d 585, 590 (4th Cir. 1996). "Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contradictory evidence." Mastro, 270 F.3d at 178.

Here, the Plaintiff argues that although the ALJ was not required to give controlling weight to Dr. Giove's opinion that the Plaintiff was completely and totally disabled–as such an opinion is reserved for the Commissioner–the ALJ was required to give controlling weight to Dr. Giove's medical opinions concerning the nature, severity, and limiting effects of the Plaintiff's impairments. The Plaintiff also argues that the ALJ erred in determining that Dr. Giove's opinion was more of a vocational opinion than a medical opinion and in failing to consider the limitations set forth by Dr. Giove in his affidavit.

As previously set forth, the regulations require the Commissioner to give controlling weight to a treating physician's opinion if it is well-supported by medically acceptable clinical evidence and not inconsistent with other substantial evidence of record. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Mastro, 270 F.3d 171, 178 (4th Cir. 2001). Here, in deciding to give little weight to Dr. Giove's opinion, the ALJ clearly determined that it was not well-supported by medically acceptable medical evidence and was in fact inconsistent with other substantial evidence of record. The ALJ stated:

> Although it has been carefully considered, I accord limited weight to Dr. Giove's opinion expressed in a March 2007 affidavit, that the claimant is completely and totally disabled from performing any occupation on a full-time

16

or consistent basis. (Exhibit 19F). The treating physician's opinion is more
a vocational opinion than a medical opinion and thus is not worthy of great
weight. Dr. Giove also did not cite any clinical or objective findings in support
of his opinion but made only a general reference to the claimant's "treatment
history" and subjective complaints.    Further, Dr. Giove's opinion is
inconsistent with his own clinical notes, which show the claimant's reports of
back pain were inconsistent and infrequent.    Finally, there are treatment
notes from 2008, including those from Trident Pain Center, which show the
claimant is not as limited as Dr. Giove initially found.

(Tr. at 26.)    The ALJ continued by explaining that he considered the opinion of Dr.

Rojugbokan, who conducted a comprehensive evaluation of the Plaintiff and found that

although the Plaintiff had some diminished muscular strength and range of motion, she

could squat, lift, and walk.    The ALJ further noted Dr. Rojugbokan's finding that the

claimant had a normal gait and walked without the use of an assistive walking device. (Id.)

In addition, the ALJ noted "the limited and infrequent treatment of [the Plaintiff's] pain

symptoms." (Tr. at 27.)

After a thorough review, the Court finds no error in the ALJ's decision to accord

limited weight to Dr. Giove's opinions.    First, as everyone appears to agree, Dr. Giove's

vocational opinion was not entitled to controlling weight.    Next, the Court finds that the ALJ

was not required to give controlling weight to the functional limitations set forth by Dr. Giove

that were based in large part on the Plaintiff's self-reported symptoms rather than clinical

evidence and that were not consistent with the doctor's own treatment notes.  See Johnson

v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005); Craig v. Charter, 76 F.3d 585, 590 n.2 (4th

Cir. 1996) ("There is nothing objective about a doctor saying, without more, 'I observed my

patient telling me she was in pain.' ").  Moreover, the ALJ outlined persuasive evidence to

contradict Dr. Giove's opinion, such as the Plaintiff's exhibited ability to squat, lift, walk, and

carry, as well as the fact that Dr. Giove's opinion was inconsistent with his notes and

17

records. As the ALJ stated:

> Dr. Giove's treatment notes from November 2006 reflect the claimant reported improvement of her back pain from prescribed medication. Although the claimant saw Dr. Giove for treatment of other conditions after November 2006, there are no documented reports of her back pain in the record until September 2007. In October 2007, the claimant underwent an MRI of the cervical spine, which revealed degenerative disc disease at C3-C4 through C7-T1. However, in November 2007, Dr. Giove noted the claimant denied back pain at that time.

(Tr. at 25.)

Ultimately, this Court cannot re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. After review, therefore, the Court agrees with the Magistrate Judge that the ALJ sufficiently described his reasons for giving Dr. Giove's opinion limited weight and applied the correct legal standards. The Court also finds that substantial evidence supports his decision to give Dr. Giove's opinion limited weight, and therefore, the Court finds no reversible error with respect to this issue.

### 2.    Residual Functional Capacity and Vocational Expert Testimony

In addition to arguing that the ALJ erred in giving limited weight to Dr. Giove's opinion, the Plaintiff also argues that the ALJ erred in determining the Plaintiff's functional limitations and her RFC, as well as in determining that she could meet the demands of her past relevant work.

An individual's RFC is an assessment of his or her "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." S.S.R. 96-8p at *1. An ALJ assesses a claimant's RFC "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(a)(4).

18

> The RFC assessment must include a narrative discussion describing how the
> evidence supports each conclusion, citing specific medical facts (e.g.,
> laboratory findings) and nonmedical evidence (e.g., daily activities,
> observations).    In assessing RFC, the adjudicator must discuss the
> individual's ability to perform sustained work activities in an ordinary work
> setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a
> week, or an equivalent work schedule), and describe the maximum amount
> of each work-related activity the individual can perform based on the
> evidence available in the case record.  The adjudicator must also explain
> how any material inconsistencies or ambiguities in the evidence in the case
> record were considered and resolved.

S.S.R. 96-8p.

Here, the ALJ found that "the [Plaintiff] has the RFC to perform the full range of light work, which is defined as the ability to lift/carry 10 pounds frequently and 20 pounds occasionally, stand 6 hours in an 8 hour workday, walk 6 hours in an 8 hour workday, and sit 6 hours in an 8 hour workday." (Tr. at 24.)  In making this assessment, the ALJ explained that he considered all symptoms and the extent to which those symptoms are consistent with the objective medical evidence and other evidence.  He outlined the Plaintiff's testimony and certain medical and non-medical evidence in attempting to resolve the various inconsistencies in the record.

Despite the foregoing, the ALJ never discussed or described any of the Plaintiff's alleged non-exertional impairments, or the evidence supporting (or even contradicting) those impairments.  For example, the ALJ never discussed the evidence in the record about the Plaintiff's limited ability to reach, her frequent fatigue, her difficulty concentrating, her need to alternate periodically between sitting and standing, or her need to take days off from work after over-exerting herself.  Although the record may in fact contain substantial evidence to contradict these alleged non-exertional impairments, or even to establish that the Plaintiff had no non-exertional impairments to prevent her from

19

performing the full range of light work, the ALJ must discuss these issues in his decision so that the Court can conduct a full and fair review. Because the ALJ makes no mention of these issues, the Court cannot appropriately determine whether substantial evidence supports the ALJ's RFC determination.

Moreover, because the ALJ never conducted a function-by-function assessment comparing the Plaintiff's RFC to the actual demands of the Plaintiff's past relevant work, it is not clear what effect, if any, the alleged non-exertional impairments (to the extent the ALJ finds them to exist) may have on her ability to perform her past relevant work. And on a related issue, the Plaintiff also claims that the ALJ erred by failing to obtain vocational expert testimony. Here again, because the ALJ's decision contains inadequate findings with respect to the Plaintiff's non-exertional impairments and the actual demands of her past relevant work, the Court simply cannot determine whether vocational expert testimony was required.

### 3. The Plaintiff's Credibility and Her Complaints of Pain

Finally, the Plaintiff argues that the ALJ improperly evaluated her complaints of pain and her credibility. Pursuant to the applicable law:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996); see also, 20 C.F.R. § 404.1529(b);

20

S.S.R. 96-7p; and 61 Fed. Reg. 34483-01 and 34484-85. A claimant's symptoms, including pain, are considered to diminish a claimant's capacity to work to the extent the alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). The Fourth Circuit has held that pain itself can be disabling, and it is incumbent upon the ALJ to fully evaluate the effect of pain on a claimant's ability to function.

Thus, to reject a claimant's testimony regarding pain, the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir. 1984)).

> It s not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his claim, and in order to ensure a well-reasoned determination or decision.

SSR 96-7p.

Here, the ALJ considered the Plaintiff's complaints and claimed limitations and ultimately found that her "statements concerning the intensity, persistence and limiting effects of [the Plaintiff's] symptoms [were] not fully credible." (Tr. at 25.) In so finding, the ALJ stated:

> The medical evidence of record indicates that while she has received treatment for degenerative disc disease since her amended alleged onset date, the claimant's pain symptoms are not as severe and limiting as she

21

> alleges. In a July 2006 Functional Capacity Evaluation (FCE), the claimant
> reported she could sit for only 30 minutes at a time; however, she was noted
> to have sat for 120 minutes while completing forms and interviewing. The
> results of the FCE were also found to be inconsistent due to the claimant's
> self-limiting performance. (Exhibit 7F). Further, by letter dated August 2006,
> Joseph M. Marzluff, M.D., a neurologist, noted the claimant exhibited only
> mild restriction in range of motion of the neck; she had no motor, sensory,
> or reflex abnormalities; her straight leg raise test was negative; and she
> exhibited good pulses in her legs. Dr. Marzluff noted he discussed with the
> claimant several surgical options that could improve her back pain.
> However, according to Dr. Marzluff's September 2006 treatment notes, the
> claimant decided to forego surgery because she felt her day-to-day activities
> were not so restricted as to warrant surgery.

(Tr. at 25.) The ALJ also noted that the Plaintiff reported an 80% improvement in her pain

after receiving lumbar facet injections in March of 2008. (Id.)

Although the Court has found that the ALJ failed to consider the effects, if any, of

the Plaintiff's other alleged non-exertional impairments (to the extent they exist), a review

of the ALJ's decision indicates that he did consider the Plaintiff's complaints of pain and

their effect on her RFC, and that he found them not to be credible and gave specific and

adequate reasons for so finding. See Hines v. Barnhart, 453 F.3d 559, 565 n. 3 (4th Cir.

2006) (noting that a claimant' s allegations "need not be accepted to the extent that they

are inconsistent with available evidence"); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir.

1986) (noting that "[i]f a symptom can be reasonably controlled by medication or treatment,

it is not disabling").

As previously mentioned, it is not within this Court's power to re-weigh conflicting

evidence, to make credibility determinations, or to substitute its judgment for the

Commissioner. Mastro, 270 F.3d at 176 ("In reviewing for substantial evidence, the court

should not undertake to re-weight conflicting evidence, make credibility determinations, or

substitute its judgment for that of the Secretary.") Thus, although the Court may have

22

treated the Plaintiff's subjective complaints of pain differently, because the ALJ adequately explained his decision and gave specific reasons for discrediting the Plaintiff's complaints of pain, the Court finds no reversible error with respect to this issue.

## CONCLUSION

The Court agrees with the Magistrate Judge that substantial evidence supports the ALJ's decision to give little weight to Dr. Giove's opinions and to discredit the Plaintiff's subjective complaints of pain. However, as explained in this order, the Court cannot adequately determine whether substantial evidence supports the ALJ's step four determination (or even whether the ALJ applied the correct legal standards in making this determination) because the ALJ's decision fails to include an evaluation of the Plaintiff's alleged non-exertional limitations and a function-by-function assessment of the requirements of her past relevant work. Depending on the ALJ's findings on these issues, the Court notes that vocational expert testimony may be required.

Based on the foregoing, the Court only adopts the R&R to the extent it is consistent with this order, and the Court overrules in part and sustains in part the Plaintiff's objections (Entry 21). The Court remands this matter to the Commissioner for further proceedings; on remand, the Commissioner is instructed to re-evaluate the Plaintiff's RFC and to more fully explain his decision, and the Commissioner is directed to carefully consider whether vocational expert testimony is necessary.

**IT IS SO ORDERED.**

August / 2 2011
Charleston, South Carolina

Sol Blatt, Jr.
Senior United States District Judge

23

## ADDENDUM

Should this remand result in the award of benefits, plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*[4]



---

[4] This language was taken from <u>Stutts v. Astrue</u>, 489 F. Supp. 2d 1291, 1295 (N.D. Ala. 2007).

24